ROBERT C. SEMMENS, Plaintiff and Respondent-Appellee, *v.* CAROL H. SEMMENS, Defendant and Petitioner-Appellant.

Fourth District   No. 15438

Opinion filed November 9, 1979.

Gomien, Masching & Neville, Ltd., of Dwight (Robert B. Gomien and Gary M. Neville, of counsel), for appellant.

Walwyn M. Trezise, Jr., of Fairbury, and Michael J. Costello, of Springfield, for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Plaintiff, Robert Semmens, filed for divorce on April 25, 1973, and a divorce was granted in May 1973. The decree incorporated a property settlement agreement dated March 15, 1973, which provided, in part, that the plaintiff would pay defendant $500 a month in alimony. In July 1976, defendant filed a motion to show cause why plaintiff should not be held in contempt for failing to comply with the divorce decree's alimony provision. Plaintiff alleged in his answer that an addendum (dated May 3, 1973) to the March 15, 1973, agreement was merged into the decree, which addendum altered his obligation to pay the $500 per month as provided in the decree. Defendant moved to strike plaintiff's answer, alleging, in part, that the addendum was ineffective since it was not incorporated into the decree and it was too late to modify the decree. After a hearing, judgment order in favor of plantiff was entered on March 7, 1977. The trial court found that plaintiff was not seeking to modify the settlement agreement but was simply enforcing the entire, voluntary agreement between the parties. The trial court ordered that plaintiff is not in contempt for failing to make the decree payments, but he should make the payments required by the addendum, and that defendant is estopped from denying the validity of the addendum. Defendant appealed.

This court reversed the trial court's judgment and remanded the cause for a determination of whether fraud had been practiced on the trial court at the divorce hearing because the May 3 addendum to the property settlement agreement had not been disclosed to the judge. On remand, Judge Glennon again ordered that plaintiff was not in contempt of court for his failure to make the decree payments and held that no fraud was practiced on the court at the divorce hearing which was presided over by Judge Erlenborn. However, if there was fraud, the parties were in pari delicto; defendant was guilty of laches; and the doctrine of equitable estoppel precludes defendant's attack on the property settlement agreement.

The present appeal brought by defendant is restricted to the determination of a single issue: Whether the trial court's finding that fraud was not perpetrated on the court at the divorce hearing is against the manifest weight of the evidence.

At the February 1977 hearing on defendant's petition for rule to show cause, Mr. Trezise, the attorney who was representing plaintiff, testified that in January 1973, Robert Semmens contacted him to discuss the institution of divorce proceedings. In effect, Trezise informed both parties that because of his personal friendship with them, he would involve himself in the proceedings only if the parties were to agree to a

divorce and arrive at a property settlement agreement in a mutually agreeable fashion.

The parties agreed on a property and alimony settlement and executed the March 15, 1973, agreement. That agreement provided, in part, that plaintiff was to pay defendant $500 per month as alimony until March 1, 1995; he was to pay child support; and he was to convey to her his interests in the marital residence subject to any mortgage indebtedness. Plaintiff was, by the agreement, to obtain certain commercial real estate in Pontiac, Illinois, in which both parties were interested as owners and lessors and on which real estate a retail business known as Semmens Drug Store was operated.

On May 3, 1973, the day before the divorce hearing, defendant was presented, read, and executed an addendum to the March 15, 1973, agreement. Plaintiff apparently had second thoughts about the terms of the March agreement and insisted upon a modification. The addendum provided, in part, that if defendant would ever sell the marital home prior to the full amortization of the mortgage, plaintiff's obligation to pay alimony would be terminated, and plaintiff would replace that obligation with a promissory note for the principal amount of the then outstanding mortgage balance. Defendant testified that she felt that the modification was not fair since plaintiff was going to receive the business real estate.

At the May 4, 1973, divorce hearing before Judge Erlenborn, defendant was not present or represented by counsel. Trezise had filed an entry of appearance and consented to default on her behalf. Plaintiff, represented by Trezise, submitted the March 15, 1973, settlement agreement but not the addendum. Plaintiff testified that he had agreed to pay defendant $500 a month alimony and acknowledged that "overall" the March 15 agreement was a fair and equitable settlement between the parties. The divorce decree consequently incorporated the March agreement but not the addendum.

At the February 1977 hearing on defendant's rule to show cause, Trezise provided the background of the property settlement agreement. Trezise testified that the parties agreed that defendant would receive the marital residence free and clear of any encumbrances. To effect this purpose, plaintiff agreed to pay defendant $500 a month, which Trezise characterized as the "so-called alimony payments," until the house mortgage indebtedness was fully amortized in March 1995. The $500 would be used for mortgage payments, insurance, taxes, and maintenance. Trezise testified that throughout the negotiations, the parties never referred to the payments as alimony; they referred to them as "house payments." Trezise called it alimony, however, for income tax purposes.

"I employed the term, alimony, for the simple reason that it would

be an income tax deduction and also that by doing that, then Mrs. Semmens would be able to write the house payment check and the tax check and would be able to deduct those items. She could deduct the interest and the tax payment and the house payment and he could deduct the alimony payment and the difference between the two at the time when they had four children was not substantial."

Trezise went on to explain why the May 3 addendum was not disclosed to the court during the divorce proceeding:

"I didn't redo the marital agreement as I didn't want to, frankly, vary the fact that the marital settlement agreement referred to alimony payments because I was trying to achieve the tax benefits that would result in, and I didn't want to put of record that fact that when the house was sold there would be a change in the method by which the indebtedness on the house would be resolved. In other words, I didn't want to make a public record of the fact that these payments were, in fact, house payments for the very simple reason that I didn't want to lose the tax effect."

It seems that defendant either never received a copy of the decree or she misplaced it. She testified that in January 1976, after examining the court record, she realized that the May 3 addendum had not been incorporated in the decree for divorce and that it had not been referred to in plaintiff's testimony.

In June 1976, defendant sold her residence. Plaintiff continued making payments until June 1976, when he learned that defendant had sold the house. Defendant then filed the motion to show cause why plaintiff should not be in contempt for failing to make the alimony payments.

In the order and opinion that issued on remand, the trial court indicated that its task was two-fold: (1) to determine whether the parties engaged in a scheme to secure an improper tax deduction, and (2) to determine whether the nondisclosure of the May 3 addendum amounted to a fraud on the court. From the tenor of the opinion it seems that Judge Glennon believed that a determination of the fraud issue hinged on the legality of the tax scheme. The trial court did not expressly consider in its order whether nondisclosure itself would be enough to constitute fraud.

■■ It has been held that a property settlement agreement which has been incorporated into a decree of divorce can be modified, without court approval, by the parties and that the modification will be enforced. *Armstrong v. Ingram* (1972), 7 Ill. App. 3d 370, 287 N.E.2d 532 (provision for modification contained in the original oral agreement); see *Lewis v. Lewis* (1970), 120 Ill. App. 2d 263, 256 N.E.2d 660.

Here, the original March 15 agreement was modified by the May 3

addendum, but prior to the divorce hearing and the entry of judgment. At the divorce hearing, the addendum was not revealed to the court. Plaintiff, while testifying, agreed that the March 15, 1973, agreement was a fair settlement of the marital property. Plaintiff did not testify to the existence of the addendum. By disclosing only the March 15 agreement, the trial court was led to believe that the March 15 agreement was the complete agreement between the parties. Failure to disclose was not an oversight by Trezise or plaintiff.

At the February 1977 hearing on defendant's petition for a rule to show cause, Trezise testified that he did not submit the addendum due to anticipated Internal Revenue Service ramifications. In effect, he admitted that he had concealed an integral part of the property agreement.

Defendant contends that the intentional nondisclosure of the addendum and the intentional representation to the court that the sole agreement of the parties was the March 15 agreement deprives the court of facts crucial to matters within its jurisdiction and discretion.

Plaintiff contends that nondisclosure did not constitute fraud on the court because the information withheld was not material. To support his contention, plaintiff admits that had the addendum been presented to the court, it would have been approved, as indicated in the trial court's opinion on remand (*i.e.*, "there would be no imaginable reason why Judge Erlenborn * * * would not have simply approved [the addendum]").

■■ Fraud has been defined as acts, omissions, and concealments based upon a breach of a legal or equitable duty, trust, or confidence, resulting in damage to another. (*Atherton v. City of Champaign* (1966), 71 Ill. App. 2d 432, 218 N.E.2d 106 (abstract).) Similarly, "concealment must be shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak." (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 79, 302 N.E.2d 201, 205.) The fact misrepresented or concealed must be material. One test of materiality in cases of alleged fraud requires that the facts must be such that the party would have acted differently if he had known the undisclosed facts. (*Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183.) This test of materiality has been applied in order to determine whether a fraud had been practiced on the court. *Deahl v. Deahl* (1973), 13 Ill. App. 3d 150, 300 N.E.2d 497; *Lytton v. Cole* (1964), 54 Ill. App. 2d 161, 203 N.E.2d 590; see *Forest v. Forest* (1973), 9 Ill. App. 3d 111, 291 N.E.2d 880.

Here, Trezise, as an officer of the court, owed a duty to the court to be honest and forthright in all dealings with the court. (See *People ex rel. Attorney General v. Beattie* (1891), 137 Ill. 553.) He breached that duty by failing to disclose the addendum. The result was that the trial court was not apprised of the complete property settlement agreement that had

been struck by the parties. In addition, Trezise's conduct belies the trial court's conclusion that he did not intend to deceive the trial court. The term "alimony" was used in the agreement that was substituted for the court's approval; the agreement did not explain that this "alimony" was to be used for mortgage, tax, and insurance payments; and the addendum, which reflected, by Trezise's own admission, the purpose for the "alimony," was not disclosed to the court. Trezise questioned the legality of the scheme and he, in effect, used the court to safeguard the scheme by seeing that the addendum was not incorporated into the decree. Although Trezise's ultimate purpose was to conceal the May 3 addendum from the Internal Revenue Service, as concluded by the trial court, in so doing he intentionally concealed the modification from the court.

Even though the trial court may have approved the addendum, concealing it from the court precluded it from making that determination. After all, according to the agreement as written, defendant's position was changed substantially by the addendum. Therefore, we cannot conclude that the trial court would have approved automatically the addendum, as suggested by plaintiff. Moreover, we think that it can be said that had the trial court, after examining the addendum, questioned either the purpose or the legality of the agreement, with respect to tax ramifications, then it surely would not have approved the agreement without question.

As previously stated, a court may enforce a post-decree, contractual modification of a property settlement agreement that had been incorporated into the divorce decree. (*Armstrong.*) It also has been held that the second of two agreements would be enforced even though both agreements had been executed prior to the entry of the divorce decree, but only the first agreement was presented to the trial court and incorporated into the decree. (*Rooks v. Plavec* (1963), 40 Ill. App. 2d 298, 188 N.E.2d 251.) In *Rooks*, the court implied that the nondisclosed agreement would not be enforceable if contrary to public policy. 40 Ill. App. 2d 298, 306, 188 N.E.2d 251, 255.

The purpose for not incorporating the addendum into the decree here is apparent. Trezise did not apprise the court of the addendum because he questioned the legality of the intended deductions. The failure to disclose the addendum to the court in order to safeguard the deductibility of the monthly payments is a practice which violates public policy even though the deductions may, in fact, be valid.

In light of the foregoing, we hold that the trial court erred in finding that a fraud had not been committed on the court at the divorce hearing. Because we hold that a fraud was committed on the court, it follows that the court is the injured party; therefore, the equitable defenses raised by plaintiff are unavailable to him.

Our holding leads us to conclude that the addendum has been tainted

by the fraud and, consequently, is void and unenforceable. Although plaintiff testified that he was unaware of any reason for not submitting the addendum to the court, he was aware that the addendum had not been presented when he testified at the divorce hearing to the terms of the property settlement agreement. There is no indication in the record that defendant was aware that the addendum was going to be withheld from the trial court. We are also satisfied that at the divorce hearing Trezise was acting solely on behalf of plaintiff. Thus, we believe that the parties are not *in pari delicto* regarding nondisclosure of the addendum and that plaintiff must bear responsibility for the actions of his attorney. See *Danforth v. Checker Taxi Co.* (1969), 114 Ill. App. 2d 471, 253 N.E.2d 114.

■ We find it troublesome, however, that defendant expects payment under the decree's alimony provision. She was aware at the time of negotiations that the payments were intended to be used for mortgage payments and related expenses, and she agreed to the terms of the addendum, which provided for the cessation of the decree payments upon sale of the home. Yet, after learning that the addendum had not been incorporated into the decree, defendant sold the home with the apparent expectation that the court would enforce the decretal alimony provision. We believe that enforcement of the alimony provision would serve to condone and reward defendant's questionable behavior; therefore, we also hold the alimony provision to be unenforceable.

The unenforceability of the addendum and the alimony provision places plaintiff in a particularly advantageous position: he is neither obligated to pay alimony nor required to assume responsibility for the balance of the indebtedness on the marital home at the time of the sale. Accordingly, in the interest of arriving at an equitable settlement, we vacate the portions of the judgment which pertain to property distribution and alimony, and we remand the cause to the trial court for a redetermination of those matters.

Affirmed in part; vacated in part; and remanded with directions.

CRAVEN and GREEN, JJ., concur.